UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| VERONICA DIXON | § |
| | § |
| v. | § CIVIL NO. 4:22-CV-148-SDJ |
| | § |
| PLANO INDEPENDENT SCHOOL DISTRICT | § |
| | § |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Plano Independent School District's ("PISD") Partial Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. #8). Plaintiff Veronica Dixon did not respond to this motion. Also before the Court is Defendant Plano Independent School District's Motion for Summary Judgment. (Dkt. #14). Dixon also did not respond to this motion. The Court then requested that Dixon file a brief addressing the Court's concerns with her 42 U.S.C. § 1981 claim. (Dkt. #18). Dixon failed to respond to this order, and PISD filed its own response brief. (Dkt. #20). The Court, having considered the motions and the applicable legal authorities, will grant PISD's motion for summary judgment, sua sponte dismiss Dixon's 42 U.S.C. § 1981 claim, and deny as moot PISD's motion to dismiss.

### I. BACKGROUND

Plano Independent School District formerly employed Dixon as a special education teacher. Dixon alleges that she did not receive the training that she requested for the role. Further, she alleges that she was not given a planning period or allotted time to complete paperwork even though all of the other non-black special

1

education teachers were. Dixon also suffered a herniated disk in her back while at work that required physical therapy and medical treatment. She claims that PISD retaliated against her for the injury by harassing her when she had physical therapy and assigning her to recess duty when she returned to work. Finally, Dixon alleges that she was constructively discharged by PISD as a result of the disparate and discriminatory treatment that she faced.

Based on these allegations, Dixon filed a complaint with the Equal Employment Opportunity Commission on November 9, 2021. Dixon alleges that she received a right-to-sue letter from the EEOC on December 1, 2021, which was followed by the filing of the instant case on February 28, 2022, within the requisite ninety-day filing period. Dixon's suit against PISD includes claims for disability discrimination under the Americans with Disabilities Act ("ADA"), racial discrimination under 42 U.S.C § 1981, retaliation and disparate treatment under Title VII of the Civil Rights Act of 1964, and intentional infliction of emotional distress ("IIED") under Texas state law. Dixon seeks actual damages, punitive damages, and an award of attorney's fees and costs.

PISD moved to dismiss Dixon's ADA claim, IIED claim, and request for punitive damages pursuant to Federal Rule of Civil 12(b)(6) on the grounds that: (1) Dixon failed timely to exhaust her administrative remedies because she did not timely file a charge of disability discrimination; and (2) governmental immunity bars Dixon's IIED and punitive damage claims. Dixon did not respond to the motion to dismiss. Because Dixon did not respond, the Court presumes that she "does not

2

controvert the facts set out by [PISD] and has no evidence to offer in opposition to the motion." Local Rule CV-7(d).

PISD has also moved for summary judgment on all of Dixon's claims, arguing that as Dixon failed (and continues to fail) to comply with the initial disclosure requirements of Federal Rule of Civil Procedure 26 and this Court's scheduling order, she is barred from presenting any evidence to support her claims. In addition, PISD's summary-judgment motion reurges its motion to dismiss arguments concerning Dixon's ADA and IIED claims.

Finally, the Court, having reviewed Dixon's complaint, sua sponte questioned the legal viability of Dixon's 42 U.S.C. § 1981 claim against PISD. The Court therefore ordered Dixon to respond to the Court's concern that under *Oden v. Oktibbeha County*, Dixon's 42 U.S.C. § 1981 claim cannot be maintained against PISD, as PISD is a governmental entity, and 42 U.S.C. § 1981 does not provide a cause of action against governmental entities. 246 F.3d 458, 463 (5th Cir. 2001) (holding that 42 U.S.C. § 1981 does not provide "a remedial cause of action against local government entities"). The Court further noted that it may sua sponte dismiss a plaintiff's claim under Federal Rule of Procedure 12(b)(6) so long as the plaintiff has notice and an opportunity to be heard. *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 642 (5th Cir. 2007) (citing, among others, *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006) and *Guthrie v. Tifco Indus.*, 941 F.2d 374, 379 (5th Cir. 1991)). Dixon failed to respond to the Court's order, and PISD filed its own supplemental brief regarding the Court's concern.

While the Court notes that Dixon has failed to respond to either of PISD's motions and to this Court's order, the Court will not dismiss Dixon's claims solely due to her failure to respond. Instead, the Court will consider the merits of Dixon's complaint, PISD's arguments, as well as the merits of the 42 U.S.C. § 1981 issue the Court raised sua sponte. *See Morgan v. Fed. Exp. Corp.*, 114 F.Supp.3d 434, 437 (S.D. Tex. 2015) ("It is well established in the Fifth Circuit that a federal court may not grant a default summary judgment where no response has been filed." (simplified)). However, where a defendant argues that a plaintiff has failed to put forth any evidence in support of an essential element of her claim, the plaintiff "must produce evidence that creates a genuine issue of material fact of that essential element of her case." *Rhodes v. U.S. Off. of Special Couns.*, No. 3:05-CV-2402-K, 2008 WL 4791380, at *5 (N.D. Tex. Oct. 30, 2008).

## II. LEGAL STANDARD

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting FED. R. CIV. P. 56(a)). If the moving party presents a motion for summary judgment that is properly supported by evidence, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

The nonmoving party "must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial." *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). To defeat a motion for summary judgment, the nonmovant must present "significant probative evidence demonstrating the existence of a triable issue of fact." *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (citations omitted). Thus, "mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden." *Pickett v. IceCold2, LLC*, No. 4:17-CV-666, 2019 WL 1063369, at *2 (E.D. Tex. Mar. 6, 2019).

Further, as noted in the Court's local rules, in ruling on motions for summary judgment, the Court "will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the responsive brief filed in opposition to the motion, as supported by proper summary judgment evidence." Local Rule CV-56(c).

### III. DISCUSSION

**A. Dixon's ADA Claim**

PISD first moves for summary judgment on Dixon's disability discrimination claim, incorporating by reference the arguments it made in its dismissal motion. PISD argues that Dixon failed timely to exhaust her administrative remedies under

5

the ADA, and towards that end, PISD attached a copy of Dixon's EEOC change to its dismissal motion.[1]

Having considered Dixon's charge and complaint, the Court finds that Dixon has failed to exhaust her administrative remedies under the ADA because she did not timely file a charge of disability discrimination with the EEOC. An employee "must comply with the ADA's administrative prerequisites prior to commencing an action in federal court against her employer for violation of the ADA." *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996) (per curiam) (citing 42 U.S.C. §§ 12117(a), 2000e-5(e)(1)). To comply with the statutory prerequisites, an employee must "file a timely charge with the EEOC" before commencing a civil action. *Id.* (citing the procedural requirements of Title VII—42 U.S.C. § 2000e-5(e)(1)—which the ADA has incorporated by reference). Once the charge is filed and a "right-to-sue" letter is received from the EEOC, the plaintiff must commence a civil action within ninety days. *Id.*

Here, it is uncontested that Dixon filed an EEOC charge and commenced the present action within ninety days after receiving her right-to-sue letter. However, PISD argues that Dixon has not exhausted her administrative remedies under the

---

[1] As the Court is considering PISD's summary-judgment claims, there is no question that PISD is permitted to submit evidence in support of its arguments. *See* FED. R. CIV. P. 56(c). However, even at the motion to dismiss stage, where PISD first submitted the EEOC charge, consideration of this document would still have been proper, as Dixon's EEOC charge is central to the resolution of Dixon's complaint, *Warden v. James Hardie Bldg. Prods., Inc.*, No. 3:20-CV-3431-N, 2022 WL 48389, at *2 (N.D. Tex. Jan. 5, 2022), and is also a matter of public record of which the Court may take judicial notice, *Stewart v. Int'l Ass'n of Machinists & Aerospace Workers*, 16 F.Supp.3d 783, 797 n.45 (S.D. Tex. 2014).

ADA because her EEOC charge included allegations of racial discrimination only, and not also allegations of disability discrimination. The Court agrees.

When considering exhaustion, "[c]ourts interpret the scope of an EEOC complaint broadly, looking at the administrative EEOC investigation that can reasonably be expected to grow out of the charge of discrimination." *Huff v. DRE Mgmt., Inc.*, No. 3:12-CV-0414, 2012 WL 3072389, at *3 (N.D. Tex. July 30, 2012) (simplified) (quoting *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008)). This fact-intensive analysis "looks beyond the four corners of the document to its substance" when determining what kind of EEOC investigation could reasonably arise from the charge. *Id*. While "there is no requirement that a complainant check a particular box or have a specific incantation" in her charge, "the complaint must contain the kind of discrimination 'like or related to' the allegations in the EEOC charge." *Id.* (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)).

The inquiry before this Court is thus whether "it is reasonable that a disability discrimination investigation would arise out of [Dixon's] EEOC charge or whether the disability claim is like or related to the allegations contained in the EEOC charge." *Id*. at *4. Here, Dixon's charge only checked the "race" box for the type of discrimination alleged. And her one-sentence discrimination statement on the charge similarly reads that "I believe that I was discriminated against because of my Race-Black/African American, in violation of Title VII of the Civil Rights Act of 1964, as amended." There is nothing on the face of the charge or within its substance to make

it reasonable for an ADA claim to arise out of it. The disability box was not checked, and disability discrimination is not mentioned in Dixon's statement or factual allegations. In similar cases where plaintiffs have attempted to raise claims that have no basis in their EEOC charge, courts have consistently held that those claims were not properly exhausted. *See Dowdell v. Culpepper & Assocs. Sec. Servs., Inc.*, No. 2:19-CV-11410, 2020 WL 5095274, at *4 (E.D. La. Aug. 28, 2020) ("In this case, by failing to check the 'disability' box or mention anything about disability in the 'particulars' section of her EEOC charge, Plaintiff did not put Defendant on notice of a possible ADA claim."); *Narasirisinlapa v. Commc'ns Workers of Am.*, No. 3-04-CV-1643-BD, 2005 WL 1586590, at *1 (N.D. Tex. July 6, 2005) ("There is no mention of retaliation based on race, age, or disability [in plaintiff's charge]. As a result, plaintiff may not prosecute such claims in federal court."); *McCray v. DPC Indus., Inc.*, 942 F.Supp. 288, 294 (E.D. Tex. 1996) (dismissing retaliation claim on exhaustion grounds as EEOC charge only checked race box and did not refer to retaliation in text of charge).

Like the preceding cases, Dixon's EEOC charge contained no notice to PISD of a possible ADA claim. The Court accordingly grants PISD summary judgment on Dixon's ADA claim.[2]

---

[2] In addition, the Court also notes that, for the reasons discussed *infra* Section III.C, this claim also fails given Dixon's evidentiary shortcomings.

**B. Dixon's IIED claim**

The Court next considers PISD's summary-judgment argument against Dixon's state law IIED claim. PISD claims that Dixon's IIED claim is barred by governmental immunity. The Court agrees.

The terms sovereign immunity and governmental immunity are often used interchangeably, but "they involve two distinct concepts." *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003). While sovereign immunity "refers to the State's immunity from suit and liability," governmental immunity "protects political subdivisions of the State, including counties, cities, and school districts." *Id.* The Texas Tort Claims Act ("TTCA") "provides a limited waiver of immunity for certain suits against governmental entities and caps recoverable damages." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008) (citing TEX. CIV. PRAC. & REM. CODE § 101.023); *see also* TEX. CIV. PRAC. & REM. CODE § 101.021. For school districts specifically, the TTCA waives governmental immunity only for "suits involving the operation or use of motor vehicles." *Herring v. Dallas Cnty. Schs.*, No. 3:99-CV-1538-P, 2000 WL 370623, at *3 (N.D. Tex. Apr. 11, 2000) (citing TEX. CIV. PRAC. & REM. CODE § 101.051). And critically, the waiver of immunity does not apply to any claim "arising out of assault, battery, false imprisonment, or any other intentional tort." TEX. CIV. PRAC. & REM. CODE § 101.057(2).

Here, Dixon has not alleged that her claim for IIED has arisen from the operation or use of a motor vehicle. And even if she had, IIED is an intentional tort under Texas law. *See Twyman v. Twyman*, 855 S.W.2d 619, 621–22 (Tex. 1993) (adopting the "tort of intentional infliction of emotional distress" in Texas "as set out

9

in § 46(1) of the RESTATEMENT (SECOND) OF TORTS"). Because the TTCA does not waive governmental immunity for any intentional torts, PISD's immunity from suit has not been waived as to Dixon's IIED claim and therefore the claim must be dismissed. *See Newbury v. City of Windcrest*, No. 5:18-CV-98, 2020 WL 86211, at *8 (W.D. Tex. Jan. 7, 2020) ("Because intentional infliction of emotional distress is an intentional tort, the City is immune from suit and is entitled to summary judgment as a matter of law."); *see also* TEX. CIV. PRAC. & REM. CODE § 101.025(a) (providing that sovereign immunity to suit is waived and abolished to the extent of liability created by the TTCA); § 101.057(2) (providing that the TTCA does not apply to any intentional tort).

**C. Dixon's disparate treatment in violation of Title VII claim**

Dixon also alleges that she was subjected to disparate treatment in violation of Title VII. In support of this claim, Dixon alleges that she "was not provided training," but that her "white co-workers were." Dixon further alleges that she "was not assigned a planning period," and that all of the relevant "non-black . . . teachers had scheduled planning periods." Finally, Dixon alleges that she was not allotted the time necessary to complete required paperwork, even though her non-black counterparts were afforded this time. Collectively, Dixon argues that the foregoing disparate treatment resulted in her having to work later than her white co-workers, and in her having to complete work at home after hours.

In its summary-judgment motion, PISD argues only that Dixon has failed to comply with the initial disclosure requirements of the Federal Rules and this Court's scheduling order, such that Dixon is now barred from presenting any evidence in

10

support of her claim due to the exclusionary command of Federal Rule of Civil Procedure 37(c)(1). PISD has also attached two exhibits to its summary-judgment motion: (1) a "growth plan" memorandum discussed by Dixon and her principal Jamey Allen; and (2) an end-of-year notice of termination of Dixon's probationary contract.

"[A] plaintiff plausibly alleges a disparate-treatment claim under Title VII if she pleads discrimination in hiring, firing, compensation, or the 'terms, conditions, or privileges' of her employment. She need not also show an 'ultimate employment decision,' a phrase that appears nowhere in the statute and that thwarts legitimate claims of workplace bias." *Hamilton v. Dallas Cnty.*, --- F.4th ---, 2023 WL 5316716, at *1 (5th Cir. 2023) (en banc). However, to survive summary judgment on this claim, Dixon must establish a prima facie case of discrimination "by providing evidence that she: (1) is a member of a protected class; (2) was qualified for her position; (3) was subject to an adverse employment action; and (4) . . . that others similarly situated were treated more favorably." *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001). This required showing of a prima facie case derives from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which the Supreme Court has explained "established an allocation of *the burden of production* and an order for *the presentation of proof*," whereby a plaintiff must first "establish a prima facie case of discrimination" through the production of evidence in support of her claim. *Reeves v. Sanderson Plumbing*

11

*Prods., Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (simplified) (emphases added).

Even assuming that Dixon has satisfied the first three prongs of the prima facie case described above, Dixon has failed to introduce any evidence showing that any other similarly situated PISD employee was treated more favorably than she was treated. Indeed, aside from filing the complaint and serving PISD—with service of PISD coming only after the Court entered a notice of impending dismissal under Federal Rule of Civil Procedure 4(m)—it does not appear that Dixon has moved forward with this case in any meaningful way. Dixon does not dispute PISD's claim that she "still has not made initial disclosures," that scheduled mediation was canceled because Dixon "failed to provide the requested mediation materials by the date provided," and that PISD "has not heard from [Dixon's] counsel since about September of 2022." On this record, the Court must grant PISD's motion for summary judgment on this claim, as given the absence of *any* evidence in the record supporting Dixon's claim, Dixon has necessarily failed to establish a prima facie case of discrimination.[3]

---

[3] In addition, the Court notes that the "growth plan" exhibit PISD submitted in support of its summary-judgment motion directly cuts against any suggestion of racial animus or discriminatory bias on the part of PISD. The "growth plan" memorandum discussed by Dixon and her principal Jamey Allen observed that "planning" "was identified as an area that [Dixon] is in need of improvement according to the T-TESS rubric." The memorandum then outlined a multi-faceted plan that was set in place to help Dixon meet the requirements of her job: (1) Dixon was provided a lesson planning template that was to be completed each week; (2) Dixon was afforded built in observation times each week to allow Dixon to learn from her peers; and (3) Dixon was directed to meet with a district representative each week "to receive specific professional learning." This evidence directly undercuts Dixon's allegations that she "was not provided training" or was otherwise not afforded the necessary resources required adequately to complete her job.

**D. Dixon's retaliation in violation of Title VII claim**

Dixon also alleges that PISD "unlawfully retaliated" against her in violation of Title VII on account of her race. To assert a viable Title VII retaliation claim, Dixon must plead facts establishing the following: (1) that she engaged in a protected activity under Title VII; (2) that she suffered an adverse employment action; and (3) that there exists a causal link between Dixon's protected activity and the adverse employment action she ultimately suffered. *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021). "Protected activity is defined as opposition to any practice rendered unlawful by Title VII," *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (citation omitted), and the Fifth Circuit "has consistently held that a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity," *Paske v. Fitzgerald*, 785 F.3d 977, 986 (5th Cir. 2015) (simplified). And when challenged on summary judgment, a plaintiff's burden goes beyond pleading facts establishing that she was retaliated against, but instead requires that she establish a prima facie case of each of the above recited elements with evidence. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012).

For the reasons explained *supra* Section III.C, Dixon's retaliation claim fails on summary judgment because Dixon has failed to submit any evidence establishing that she engaged in a protected activity. Moreover, it is unclear what evidence Dixon could submit in support of her retaliation claim, as Dixon's complaint is devoid of any specific allegations explaining how she was retaliated against. In the body of her complaint, Dixon asserts that PISD retaliated against her "after she suffered a

13

temporary disability due to [a] workplace injury." However, this allegation suffers from two defects. First, to the extent Dixon is seeking to assert an ADA retaliation claim, this attempt fails for failure to exhaust administrative remedies. *See supra* Section III.A. Second, even if Dixon were permitted to advance her ADA claim, disability retaliation is not covered under Title VII. *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) ("Title VII does not proscribe discrimination on the basis of disability."). Thus, no evidence supporting a disability retaliation claim would aid Dixon's Title VII claim in overcoming summary judgment. And otherwise, there are simply no allegations whatsoever in Dixon's complaint explaining how she was retaliated against for engaging in Title VII protected activity. For these reasons, the Court will grant PISD summary judgment on Dixon's Title VII retaliation claim.

**E. Dixon's 42 U.S.C. § 1981 claim**

Finally, Dixon has also asserted violations of 42 U.S.C. § 1981 premised on her alleged unlawful termination. However, the Court requested that Dixon address whether, under *Oden v. Oktibbeha County*, Dixon's 42 U.S.C. § 1981 claim against PISD could proceed as a matter of law, as PISD is a governmental entity, and 42 U.S.C. § 1981 does not provide a cause of action against governmental entities. 246 F.3d at 463 (holding that 42 U.S.C. § 1981 does not provide "a remedial cause of action against local government entities"). Even though she was afforded an opportunity to respond to the Court's concern, Dixon declined to file any responsive brief with the Court.

The Court concludes that Dixon's 42 U.S.C. § 1981 claim is barred as a matter of law under *Oden v. Oktibbeha County*. However, the Court recognizes that following

the Supreme Court's decision in *Johnson v. City of Shelby*, 574 U.S. 10, 135 S.Ct. 346, 190 L.Ed.2d 309 (2014), a handful of unpublished Fifth Circuit opinions have questioned whether it is any longer permissible to dismiss Section 1981 claims where a Section 1983 claim would instead be viable. *See Escamilla v. Elliott*, 816 F.App'x 919, 923–24 (5th Cir. 2020) (per curiam) (observing that *Graham v. Bluebonnet Trails Co.*, 587 F.App'x 205, 206 (5th Cir. 2014) (per curiam) "expressed its doubts about the district court's denial of the plaintiff's section 1981 claim on the ground that she did not cite section 1983 as the procedural vehicle for asserting such a claim, particularly after the Supreme Court's decision in *Johnson v. City of Shelby*." (simplified)). However, the Court offers the following observations. First, unlike in *Escamilla*, Dixon nowhere asserts that she is also making a separate Section 1983 against PISD. Second, unlike in *Graham*, the Court presented Dixon with its concerns about the legal viability of her Section 1981 claim and afforded her an opportunity to respond, which she declined.

Moreover, *Johnson v. City of Shelby* was itself concerned with a complaint that at least pleaded facts sufficient to make out a Section 1983 claim. 574 U.S. at 12 (holding that the complaint at issue "stated simply, concisely, and directly events that, they alleged, entitled them to damages from the city. Having informed the city of the factual basis for their complaint, they were required to do no more to stave off threshold dismissal for want of an adequate statement of their claim."). No such facts have been pleaded in Dixon's complaint. A claim brought against a governmental entity pursuant to 42 U.S.C. § 1983, also known as a *Monell* claim, requires proof of

15

three elements: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)); *see also Bailey v. Mansfield Indep. Sch. Dist.*, 425 F.Supp.3d 696, at 713 (N.D. Tex. 2019) ("To state a claim under section 1983 against a school district, the complaint must allege sufficient factual content to permit the reasonable inference (1) that a constitutional violation occurred and (2) that an official policy attributable to the school district's policymakers (3) was the moving force behind it." (simplified) (quoting *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 622–23 (5th Cir. 2018)). Thus, even if the Court were to recast Dixon's Section 1981 claim as a Section 1983 claim, it would still fail, as Dixon's complaint is devoid of any allegations concerning how an official policy attributable to PISD's policymakers was the moving force behind the constitutional violations she allegedly suffered. Altogether, Dixon's Section 1981 claim must be dismissed.[4]

## IV. Conclusion

For the foregoing reasons, it is **ORDERED** that Defendant Plano Independent School District's Motion for Summary Judgment, (Dkt. #14), is **GRANTED**. Plaintiff Veronica Dixon's Americans with Disabilities Act, Texas state law intentional

---

[4] The Court also notes that, for the reasons discussed *supra* Section III.C, summary judgment would also be appropriate as to Dixon's Section 1981 claim given the absence of any evidence to support the claim.

infliction of emotional distress claims, and Title VII claims are hereby **DISMISSED with prejudice**.

It is further **ORDERED** that the Court sua sponte **DISMISSES with prejudice** Plaintiff Veronica Dixon's 42 U.S.C. § 1981 claim.

It is further **ORDERED** that Defendant Plano Independent School District's Partial Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6), (Dkt. #8), is **DENIED as moot**.

As all of Dixon's claims have been dismissed with prejudice, the clerk will close and terminate this matter.

**So ORDERED and SIGNED this 23rd day of August, 2023.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE